May it please the court. Good morning, your honors. I'd like to reserve four minutes for rebuttal, if I may. My name is... Try to keep track of your own time. Yes. My name is David Cortman. I represent the plaintiff's appellants in this case. As a starting point, the content-based nature of defendant's code is not difficult to find. As a matter of fact, it begins on page 2 of the town's ordinance. Section 4.402, which is the beginning opening code, states that no sign is permitted in the entire town unless a permit is issued. But then the very next sentence exempts only certain signs from that permit process, based on the content of those signs. Many cases, both in this circuit and otherwise, have held that unequal treatment of signs, whether it's exemptions from permit processes or exemptions from restrictions, based on the message of the sign is content-based and therefore impermissible. A few examples of the signs that are exempt from the permit requirements are real estate signs, political signs, ideological signs, and certain business signs. And each one of those signs is also treated differently based on the content. So, so far we already have two different layers of content-based determination in defendant's ordinance. First, there's a small group of signs that are exempted from the permit, and then among those signs, each sign is treated differently in location and duration and size, based on the content of those signs. At some point, though, there is a difference between the sign saying something and then determining that it's content-based, if you look at FODI. So where does, how does your case fit in there? Well, I think we fit neatly into FODI and into the Desert Outdoor Advertising Case, the National Outdoor Advertising Case. Basically, they've held, if you determine on the front side of the ordinance that you make distinctions based on the content, for example, you have categories of informational signs, political signs, ideological signs, religious signs. Right there, without going any further, it's content-based, because you're treating each sign differently based on what the sign says. But what's interesting about Your Honor's question is, for example, if you look at the G.K. Limited case, that's a great case to determine the distinction between what is a true content-based ordinance like here or what is not. In the G.K. Limited case, for example, they specifically said that whether a sign meets the grandfather clause. So it didn't matter what the sign said. The only thing they were looking for in that case, have you changed the sign and therefore lost your grandfather clause? That was the officer must read it test. And so what this Court has said is, are we looking at the substantive message of the sign? What does the sign say? Or, as in that case, are we only looking to see if the sign was changed and therefore losing your grandfather clause? Well, it's interesting, if you look at the FODE case, if I may read one short section of it, two short sections of it, to answer Your Honor's question. It says in FODE, the ordinance bans the posting of signs on public property, which is exactly what we have here, or the displaying of signs in the public right away. And that's actually what plaintiffs are seeking. The ordinance contains several exemptions. There are exemptions for temporary open house real estate signs, sign placed by the government, safety, traffic, and informational signs. And the Court goes on to hold that these exemptions for open house safety signs and public informational signs are content-based, because the law enforcement officer must read a sign's message to determine if the sign is exempt from the ordinance. So this fits exactly under FODE, because that's what FODE held. When you have distinctions that are based on the content of the sign, what, quote-unquote, category do we put it into? If this is a political sign, it gets treated one way. But if we look at the sign and we say it's a religious sign, it gets treated another way. And so it's content. So if you look at the practical reality, then, is it that you need to have a sign ordinance that says no signs, and if there's any exemptions on time, place, or manner, we'll issue those, but you have to have a permit? I mean, what is a sign ordinance that would work in order for the city to limit the number of signs that proliferate? Sure. A sign ordinance that would work would be the same that the Court repaired, I guess would be the right word, in all the other cases, the outdoor advertising, national advertising, and the FODE case. The city has the authority to do a lot to regulate signs. The one thing they cannot do is regulate it based on the content of the sign. So, for example, to answer the question, as long as you don't treat the signs differently and you say, okay, we only want to have a certain size sign, everybody can only have a sign that's six foot by six foot, for example, that's okay. But what you cannot do is what they do here and say political signs can be six foot by six foot, religious signs could be three foot by two foot, and that's the distinction. So what they need to do is regulate it across the board. Your Honor talks about the permit process. They can also do the same thing. But what they must do is say that anyone who would like to put a sign on public property has to have a permit, go through a permit process, but that would apply across to everybody. Could they say if you're advertising an event that you can only do it 12 hours before? Only if they treat all events the same. If all events were in there. Because, of course, you'd have to look at it to see if it was an event or if instead it was a poem, for example. Right. And what's interesting about that question, if you read the G.K. Limited case, that was one of the issues that was discussed. Is it truly event-based? When you look here, an election is obviously an event, takes place on one day. But the election signs in this case can be up an unlimited amount of time before the election and 10 days afterward. With the church service, it can only be allowed up 12 hours before the service and one hour after. So those are both event based, but yet they're treated drastically different under the ordinance. Can you treat governmental signs differently from private signs? It's a I would say. Well, let me put it this way. Case law has said that that's a content based distinction when it's listing the type of signs. And they say it's content based if it's directional governmental. So case law has treated that to be content. So if you wanted to take police station this way, hospital city hall, you have to let everybody put up signs. I think I think you're on. I think you can. I think I think governmental signs are different. And I think the reason is, is that when you have governmental signs, for example, street signs and one way signs and stop signs and different things like that. I don't think that because you put up a stop sign, you have to allow the private sector to put up a sign. Because I think the difference here is we're looking at granted grant granting the private sector access to public property, because a person on their own front lawn has a right to put up signs. The government can regulate the size and those type of things. But the Supreme Court said in city of Ladue, you have a right as a homeowner to put up certain types of signs. So what we're talking about is access to public property, which is what we're seeking. So the answer to your question is, I believe, yes, they can treat them differently, because as long as you treat the private sphere, whoever they happen to be, equally in accessing public property, I think you can do so. Because I think the rule otherwise wouldn't make sense. For example, the government wants to put up stop signs and street signs. And so therefore, everybody has a right to put up signs on the public property. And I would say that's not the case. That's all. You don't think it's possible because an election has a season, so to speak, usually under state law, that you could say political signs could be left up for that period and event signs have to be within X hours of the event? Well, here's the problem, though. Case law, in fact, defendants have admitted in their briefing, and case law clearly says in the G.K. Linden case that an election is an event. So I guess the question is, is how do you distinguish between an election, which is an event, and another type of event, like in a religious event? The election takes place on one day, and yet they could put up signs for years in advance. And the church service takes place on one day, and they could only put those signs up for 12 hours. So it still leaves us in a content-based quagmire because they're both event-based, as admitted by the court, and obviously as an election. Well, but then you'd have – it doesn't mean it couldn't be done. You'd be looking at it under a different standard. That's exactly right. And that's exactly the point. The town here has a tremendous amount of authority to regulate signs. And I think what's important, though, what the Court has said, the Supreme Court, the Ninth Circuit, over and over again, the one thing you cannot do is exactly what defendants do here. If you can – if you want to regulate signs in any manner, the number of signs, the permit process, the size of the sign, you're certainly welcome to do so. The only thing you cannot do is read the sign first and then treat it differently based on what it says, and that's exactly what this ordinance does. So it doesn't limit their authority tremendously. It actually is the other way around. There's a few things they cannot do, yet this ordinance does exactly that. And I think the other thing that's interesting is when you look at, for example, the narrowly-tailing part of the test, what the courts have said in sign ordinances, if you are regulating, for example, traffic or safety or aesthetics, which is the interest proposed here, then you have to regulate signs equally that affect those same interests. So, for example, the courts have said if you want to limit the number of signs because of traffic or because of safety or because of beautifying the town, you can do so. But you can't pick and choose which signs you want to clutter up the town and which signs you don't. For example, I think the Eighth Circuit said political signs are the most proliferated. They have the most number during the election season. They're up everywhere. But if you say we want to make the town beautiful and you regulate signs in a different way based on their content, it's not narrowly-tailored because you're allowing political signs to clutter up the streets but not religious signs. And the point is that they all clutter up the streets the same. If you had to get a permit, would it be permissible to have a first-come, first-served up to some reasonable limit so you wouldn't have more than X signs at any given location? I believe, yes, if you would limit the amount of time the sign can be up because otherwise what you have – You would exclude someone. That's right. But assuming that you had some rollover provision. That's exactly right. And there's so many amount of ways that the town could regulate signs. You can come up with any plan you want to. The one thing you can't do is just treat them differently based on the content. And so, you know, the courts basically have said, we understand the predicament that the cities are in because they have to regulate and beautify and traffic and safety. We understand that. But what we want to make sure is that they do it in accordance with the Constitution. And so they have a lot of leeway. They just don't have leeway to make sure that they make distinctions based on the content of the signs. And obviously that's what they do here. Thank you. I'm going to give the rest of my time for a vote. May it please the Court. My name is Kim Alvarado, and I'm here on behalf of the Town of Gilbert and Adam Adams, its enforcement officer. I think Judge McKeown's question was a great one, because we have to get into the practicalities of how to regulate signs. The sign ordinance at issue here is a temporary directional sign. By definition, it's temporary. There is a time limit built into it. What the plaintiffs are saying is that you have to basically put your head in the sand and can't realize that a political sign has a different season than a garage sale sign, that they have to be treated exactly the same. Well, if the town treats them all exactly the same, then we're going to get lawsuits saying, well, if we pass a sign ordinance that says every sign has to be up for ten days and then taken down for five, well, that doesn't really help me. I'm the garage sale. I just wanted it up my one day on a Saturday and taken down again. Let me ask you about the sign, the religious sign. It's 12 hours in advance of the service. Of any event. So if the church service was at 11 a.m. Sunday, you'd have to wait until it's 11 p.m. on Saturday to put your sign up, is that right? That's correct. It would be ridiculous, wouldn't it? Nobody would see it until maybe 8 or 9 o'clock the next morning. Which is when people are out trying to find that location. I mean, the purpose of a directional sign – Well, but nobody would get the message on Saturday. If they chose to have their signs out at 11. If that's the only way they're getting their message out. They wouldn't have to come out before 11 p.m., could they? If that's the only way they're getting their message out. There would be no advanced knowledge until sometime Sunday morning, where most people would be asleep. Well, I mean, in terms of this one particular way to get your message out, that's correct. But, again, these are directional signs. The whole point is turn left up here. Here's an arrow. If you have directional signs that are out three days before the event, what are we pointing to? It doesn't even make sense. I mean, in this case, this is a – Well, maybe the people want – it's not only directional. There's some element of advertising. Well, that's – exactly. The only thing the town is trying to do here is give certain speakers, like the church, an advantage that other speakers don't get. They're allowed to put out directional signs. And other businesses don't get to do that. But that's – the only thing they're trying to regulate are signs giving directions, which don't make any sense if there's nothing here. How large is the town? I'm sorry? How large is the town? What's the population? I don't know. I'm guessing maybe 100,000, 150,000. Fairly good size. I thought it was about 10,000. No. It's – the town of Gilbert is a former cowboy dairy town that has had a lot of growth, probably in the last 10, 15 years, with the real estate boom in Arizona, which is now, of course, going the opposite way. But so that's – but the downtown of Gilbert is a very western-looking little town and things like that. One thing I don't think – really, either side is briefed properly, but I think it's part of the issue is because of the procedural posture that we're in. But I know, and actually reviewing many of the opinions that the judges on this panel have written, and that's the issue of whether this is a public or non-public forum. You heard councils say that what they want here is private access to public property. That's their goal. And because political signs are given, are allowed to be put in the public right-of-way during a season, then they now want everybody to be able to do that, including churches and all those other things. Two issues about that. First, the temporary directional sign ordinance is concerning off-site signs. With a political sign, with even an ideological sign, there is no situs. These are just beliefs, opinions, causes that you support. What the town is trying to regulate is whether it's a church, a residential home, a business, they have a location, but they're wanting to essentially give people information off their own site. The town doesn't allow billboards in the town of Gilbert. But by essentially doing this temporary directional sign, what they're not wanting, though, is temporary mini-billboards everywhere. Because if you take, again, the temporal nature of the signs out of the equation, they just become short little billboards, which are even worse, because they're now close to where people can trip on them and things. So I realize that this case, they've reserved the Religious Freedom Act as a claim, but if they wanted to put up a sign that said that Jesus will save you better than anyone else, including the town of Gilbert, is that an ideological sign? Yes. And how do you know that? Because it conveys a noncommercial message. It's not a religious sign? Well, religious, it's a noncommercial sign. Do you have categories, ideological, election? Is religious a category? No. So it's not a political sign, but that would be an ideological sign. What if it said, same message, attend this church Sundays at 5, such and such auditorium, with a little arrow? Right. Then what kind of sign would it be? Right. Well, again, the question again, is it off-site, on-site? No, we want to put this in the right-of-way, because I think an ideological sign can go anywhere, right? On private property. Only on private property? Right. The signs are allowed in the public right-of-way, which is the, you know, sometimes, again, it varies how wide that can be, but it's basically the paved road, the sidewalk. Sometimes it ends at the sidewalk. Sometimes there's an area of landscaping behind the sidewalk where they lay utilities. Okay. It's basically where the property line starts. What can go in the public right-of-way? The political signs, which if you look at the definition of a political sign, it's an election sign, because the candidate or the issue have to be on the ballot. The Secretary of State in the state of Arizona has a process by which you get on the ballot. So councils claim that these can be up indefinitely is not true, because it's only once a matter is recognized beyond the ballot that it can be an election sign. And obviously there's election laws that govern people being able to print signs, that you have to put an identifying marker on them, all that type of thing. But those are permitted in the public right-of-way. Under what? Under what category? That permits are not required for political signs, which are by definition election signs, and the ordinance specifically states they can be put in the public right-of-way. And then political signs can be put there, also directional, temporary directional signs? No. Cannot be put? Correct. In the public right-of-way. Right. And if you look at this Court's analysis in many of the public forum cases. Let me just ask. Sure. Anything else can go in the public right-of-way besides political signs? The one category, and this is part of the brief, was it's called builder's weekend directional signs in certain locations. For some new development. For a new development, which are in the outlying areas of town where there is nothing else other than the development goes in first and then there's just empty land around it until the population is built up enough to sustain a grocery store wanting to come in, a strip mall being built. There basically is nothing else. Those are also subject to the permitting process. And there's also other restrictions on them in terms of if there's other builders out there, how many can be placed in a certain geographic area and things like that. So no other signs can go on public right-of-way except those two kinds. Correct. Correct. And so that is not enough to make this either a traditional public forum or a designated public forum. This would be a limited public forum. We're just talking about the political signs. That's why they're different. This is a political sign in terms of an election is a public event that the government is allowing signs to be posted on public property. That doesn't mean, like you said, that everybody who wants to advertise a church or a school or anything like that giving directions to an event needs to get the same type of access as an election sign. So what's that seize candy sign that's in the record? What kind of sign is that? It might be sloppy enforcement. I mean, that's part of the point. I mean, the practicalities of trying to regulate a garage sale sign, you might have a garage sale once every ten years. You put it up. You may not even have your address on it. You're just going to say garage sale arrow, and it's going to be down in two hours. The practicalities of the town, you know, the number of police officers out. That has to go on private property, though. Correct. It does. It does. But, I mean, part of the irony here, there's been a lot of case law both at the U.S. Supreme Court and the Ninth Circuit telling towns what they have to allow. They have to allow the political signs. They have to allow the on-site signs about anything. And so now the town, in this case, is really trying to allow all those types of signs. It even goes as far as saying any sign that's permitted, wherever it's allowed, can also have a noncommercial message on it. So the business, the subway sandwiches, can be saying, hey, $5 footlongs, oh, and by the way, stop the war in Iraq. They can do that. But what we're saying, though. Does the subway also advertise a different business on this wall? I don't think under the zoning laws they can. If you start going into the 407, 408, 409, those are regulating by whether it's an office complex, an apartment complex, public institutional, which is where most churches are going to fall under, the 4409, and that's governing a lot of on-site advertising or on-site signs, really. What the town is trying to avoid in this case are basically off-site billboards. But what they're doing is they're letting certain speakers, in this case individual residents, who are either going to be having an open house for their house or having a garage sale or certain nonprofit organizations, whether that organization is having a commercial or noncommercial event. I mean, that's the other thing about the temporary directional sign. It's not only, you know, many schools can have a carnival and they're charging money. A hospital is going to be a commercial enterprise and they might be saying we're giving out flu shots for $10. Those are commercial signs, but those speakers are essentially exempted from the permitting process. The town is basically giving a break and allowing people to have this directional sign. But what they're not wanting, though, to do is by putting a time limit on it, what they're not wanting to do is basically have permanent billboards everywhere and permanent ads. They're saying when you're having that event, you can put up these signs for a limited duration. You can't have a sign that directs you to the hospital. No, you could. You could. Right. I mean, they would fall under the nonprofit organization. But it's not a temporary event. Temporary. No, right. And that's the distinction. There's temporary. I know. I'm just asking. You cannot have a sign that tells people how to find the hospital. I think at that point you're going to be falling under it's almost like a traffic sign that's truly is a governmental sign. And your question about governmental speech, with the U.S. Supreme Court just came out with that Pleasant Grove case, I think, a month or two ago, talking about how permanent government monuments and signs on public property is governmental speech, which is not subject to the First Amendment. But, I mean, when you're talking about one of those blue signs with a big H, that would be a government sign. Right, right. What if Mercy Hospital wants to put up a sign that says, Mercy Hospital, take a right? I think at that point you're talking about like off site. That sign would not be permitted. No. Because at that point it is a permanent sign, and there's different regulations for permanent signs. Because they have to be made of different materials. They have to be located in certain areas where they're not going to constitute, like I said, a tripping hazard to pedestrians, things like that. And, again, under the zoning regulations that are found in 407, 408, and 409, that's governing the type of signage that people can do. So one of their arguments, I think, is that if they can't go on public right away, that basically they don't really have a way to go at all because, you know, to go around and find some private owner that's going to let you put a sign that makes sense in terms of the direction on their private property so that they really don't get to advertise their nonprofit activity at all. Because you won't let them go on to the public right away. That is their argument. I understand that. But, I mean. So what's wrong with that argument? Well, I mean, first of all, there's lots of ways to get out the message about we're a church and we meet at this location. I mean, and certainly this is also not talking about on site signage. Certainly where they're located they can have lots of signs saying we're here and come on in and we meet at this time. But, no, we don't believe the town is obligated under any constitutional standard to allow people basically to advertise their existence on public property. All right. Thank you, Counselor. Thank you. Thank you, Your Honors. First thing I'd like to say, by counsel's responses it's obvious that the entire code is content based. Every question that was asked showed different treatment among signs. But one thing I want to clarify in the record is what types of signs are allowed on public right of way, because there are many types of signs allowed on the right of way. Political signs obviously are allowed on the right of way, and that's at ER 103. Ideological signs, what's interesting, counsel claims they're not allowed on public property. There's nothing in the code that limits them as to such. And if I may read a quote from the record in ER 42, and this is from the oral argument below. Counsel stated to the court, he is correct that 4.402, I believe it's J for ideological signs, doesn't have any specific requirement on the placement of signs. That's because under the town's code, ideological signs are afforded the broadest freedoms of any type of sign permitted in the town of Gilbert. So to claim that there's a limitation that they cannot be on public property simply is not accurate as far as the record goes. What does that mean, all zoning? When it says, I think, on ideological signs, if you read the text, it says all zoning districts. But does that mean public property, too? I don't know what that means. It does. Basically, the town is divided like every town into industrial, commercial, residential. And it doesn't distinguish between private and public. It just distinguishes in that particular zone, including all private and public property. So it's not making a distinction based on public and private. It's making a distinction based on the entire zone that that sign is located, whether that is industrial, commercial or residential. Let's say the only thing that was permitted on public right-of-way was a political sign. And that still would be content-based. I understand that, but then would it be able to overcome that? Would the town be able to overcome that? No, because it would fail the compelling interest standard. As this Court has said, if you make a content-based distinction, the town must show not only compelling government interest, which, by the way, has not advanced one, and secondly, this Court has basically held that safety and aesthetics do not rise to the level of compelling. So there is no compelling interest, in addition to the fact that it also fails the narrowly tailoring prong that we discussed before. So it fails all three prongs of the test, and obviously you only need to fail one for the ordinance to be struck down. But there's more signs that can be allowed on the right-of-way. There's homeowners association directional signs that can be on the right-of-way for 30 days before that event, and that's at ER 120. There are weekend directional signs that can be on the right-of-way. That's ER 116 to 17. There are residential open house signs that can be on the right-of-way, and that's at ER 113. There are business signs that can be on the right-of-way, commercial A-frame signs, and that's at ER 104 to 106. So to state that there are only one type of sign that can be on the right-of-way is simply not accurate under the record. But I would also say quickly as to the mini billboard argument, the election signs, what the code says is that it can be up for any election or any issue. So whenever a person decides I'm running for an election, whether that's 10 years ahead of time, there's no limit on the code. They can put up their sign for 10 years. So in essence, it allows a mini billboard. There's not a, that isn't also circumscribed by state law or local law with respect to what is an election and when you are a candidate. It can be. And so if that law happens to be four years, for example, you can declare four years. Whatever the law has to be, you can put yourself on the ballot. You may be allowed two years out or four years out. The point is, is that religious signs, whatever that time limit is, I can tell you it's not 12 hours. So regardless of the regulation, whether it's one year out, when you declare two years out, four years out, the political signs are allowed that long. The religious sign is not allowed that long. But other directional signs, homeowners association, 30 days out, we can build their signs on them right away, Friday. They can get out the Friday before, not Saturday night. So regardless of how it's all parsed out, it's clearly content-based, there's no compelling interest and it's not narrowly tailored. But the key to it is, and the simplest way to look at it is, is when you read. So if after listening to this argument and rereading your brief, the city goes home and says no signs on public right away, then what do you do? What do you say? I think they could probably do that. And see, what we're looking for is equal treatment, that's all. And it's up to them to decide how they want to regulate signs. Now, whether the political community will let them get away with that is another story, but that's the political process and that's the point. I think we're going to have to do so. Thank you, Ken. Thank you, Your Honor. Case to this argument will be submitted. Final case of the morning is Delano Farms Company or Delano Farms Company versus California Table Grape Commission. Counsel, do you call it Delano or Delano? Delano. Which? I don't know. Good morning, Your Honors, and may it please the Court, Brian Layton on behalf of the appellants, Delano Farms Company, Susan Neal Company, and Lucas Brothers Partnership. This is the second time we've been here. Once back in 2002, 2003, where this Court reversed Judge Wanger Blow. This case was filed in 1996, and after this Court's reversal in 2003, for the first time, the California Table Grape Commission decided that their defense ought to be government speech. They had never crossed their mind before. It never crossed the mind of the federal government until belatedly in the United Foods case that was decided in 2001, but let's call it government speech. So it seems as though it's an afterthought for something that they pressed on. Well, it's an invention of this century, I think. Just to sue the comments on that and his dissent in the case of the Johnson case. Yes. It's an invention, so let's face it, we're looking at a new doctrine, not very old. Yes, and that was one of the preliminary points that I wanted to discuss with the Court, is at times in these types of cases that I've been doing since 1986, which is the first case regarding Wildman Brothers and LA Tree Fruit. The case was decided, it was a four to three, I mean five to four vote, and the courts then below, after the Wildman case was decided, decided that none of these cases that were pressing producers and shippers for assessments to pay for speech-related purposes could pass, that they all pass constitutional musters and started reversing cases. Then there was the Maverick Court, the Sixth Circuit Court of Appeals in United Foods that said, oh, wait a minute, this is a little bit different. The primary purpose of the federal mushroom promotion program is to promote and advertise mushrooms. It's not an economic regulation that only has some side part of some advertising or promotion. And they found in that case that since the primary purpose was promotion and advertising, it is unconstitutional. The government wanted to argue government speech, but it was too little too late. So then, the Johans Livestock Marketing, is what I call it, Livestock Marketing Beef case, Beef Act case, went up there and the government preserved the issue of government speech, and the government prevailed that it was government speech. This court below in Delano Farms takes that case and, with all due respect, it was a results-oriented decision. This court does not like this case for some reason. There's been a lot of remarks during the 12 years this case has been going on that, why would our clients object to advertising something we're in business to sell? And it's a little bit deeper than that. It's philosophically, and we'd like to choose our own messenger, not the table grape commission. I mean, that's been, I think, a legitimate argument for all of these, is they don't want to be, it's kind of a crammed down proposition. Yes, I mean, philosophically, they want to do their own thing. They want to promote their own table grapes in their own way. This court found that to be of good purpose and a good reason back in 2003 when Judge Wanger got reversed below. If you had a name, the three most important things that shows this is not governmental speech, what would they be? A total lack of government control over anything the table grape commission does, unlike Judge McEwen's decision in the pistachio commission case and unlike the beef case. The table grape commission is the first commission organized and formed by the state legislature in California under the Ketchum Act in 1967. The table grape commission was basically authorized, the state imprimatur, to compel mandatory assessments for what is basically a private trade association. There's a lot of voluntary organizations, but they're voluntary. This is mandatory, but it still operates like a private trade association. In the beef case, the court remarked over and over and over again as to how much control the secretary of the United States Department of Food and Agriculture had over the beef board. The beef board was simply an arm of the state. They had no separate autonomy. It was not a separate organization. The USDA representatives attended every meeting. They approved every budget. They approved all of the expenditures. They approved every advertisement, every promotional program. Everything about the beef board was government control, government control, government control. The Supreme Court went over the degree of the government control, and in order to emphasize that point, it said the degree of government control over the message funded by the checkoff, beef checkoff, distinguishes these cases from Keller v. State Bar of California. There, the State Bar's commutative activities to which the plaintiffs objected were not prescribed by law in their general outline and not developed under official governmental supervision. Well, aren't all these members of the Great Commission, aren't they all appointed by the government? Well, this is kind of yes. Technically, they're appointed by the secretary of the California Department of Food and Agriculture, who nobody gets to vote for. He's appointed by the governor. Nobody gets to vote for the secretary. He's appointed, but they're nominated. They go through votes through the six districts that grow table grapes, and whoever gets the most votes, the secretary appoints. But the commission itself hires the entire staff. The commission is just nothing but our competitors. There are producers and shippers. The commission staff is hired by the commission, our competitors. Their salaries are fixed by private parties. The secretary has never attended a California Table Grape Commission meeting, unlike pistachios. They're not even apprised of when the meetings occurred. They don't read the meeting minutes, never have. The chief of the marketing branch for all those years, Lynn Morgan, when she was deposed, says she's never seen one of their advertisements. My Public Records Act request to the secretary, to CDFA as I call it, California Department of Food and Agriculture, asking for all of the reviews of any advertisements, promotions, et cetera, they said we don't have any. We have none. The CDFA does not approve the budgets. They approve the budgets for the Pistachio Commission. The secretary does not approve the expenditures of the Table Grape Commission. They did with respect to the Pistachio Commission. As I said, the secretary never attends the meetings of the Table Grape Commission. It did the Pistachio Commission. The secretary does not look at, review any promotions or advertising. They reviewed all of them with respect to pistachios. They reviewed all of them with respect to the beef case. The Pistachio Commission, it authorized the secretary to have the Pistachio Commission cease and desist any activity that the secretary thought was contrary to law or was not carrying out the governmental purpose. Are we looking at the statutory setup to determine the government control, or are we looking at actual instances of control in terms of how the Supreme Court directs us? Your Honor, the easy thing in this is we're looking at both. Under the Pistachio Commission law on virtually every other commission and board established in California, it states that the commission is to design these things, their budgets, their expenditures, where they're spending the money in, for concurrence by the secretary, by concurrence through the secretary, through the concurrence of the secretary, and also the many boards and commission meetings that I've gone to, CDFA is present. I see them all the time. I don't see them at the Table Grape Commission meetings. I haven't been to them in the last year or so. Maybe they've changed now. But in the Table Grape Commission law, there is nothing except the secretarial formal appointment power of the private parties to be members of the commission. Remember, there's no ---- And removal power. Removal. Excuse me? Removal. Removal. Yeah, he can remove, but he can't remove the staff. But the problem is, is it doesn't make it to the level of control and oversight and officious intermeddling that apparently the Supreme Court required for it to be government speech with respect to the Beef Board. It's just not around. They're potted plants 200 miles away from the Table Grape Commission offices. The secretary has never removed a commission member. He's appointed everyone that's been nominated by vote, the fact that he can do it. How is that controlling the message from beginning to end like the U.S. Supreme Court required and stated that they required for the Beef Act to fall under government speech? We also have to remember that the California Table Grape Commission is set up as a corporate body with the ability to sue and be sued. And here's another good one. The Beef Board is simply an arm of the secretary. Nothing of the sort is present here. Judge Wanger stated, and the commission argues, that the secretary has a right to tell the commission not to do certain things or to do certain things. The Pistachio Commission has said the secretary has that authority any time it wants. Here, it's if someone files a grievance against the commission. And the commission hears it first. And if they don't like the decision, they can appeal it to the secretary. But the interesting thing is if the secretary agrees with someone who grieved, like I did on behalf of my client, the commission gets to sue the secretary. Does that happen? It did in the California Tomato Commission case. The California Tomato Commission is set up kind of like the Pistachio Commission. The secretary ordered the commission not to do something and to do something else. They didn't like it, and they sued the secretary. And it's authorized by statute. Pistachio Commission is the same way, is that if the commission does not like what the secretary orders it to do or not do, they can turn around and sue the secretary. Now, so how is it called government speech? So that wouldn't distinguish this from the pistachio? This one's even more distinguishable than pistachio because here the secretary is not involved in anything. He doesn't have separate. I guess I was really speaking to that narrow issue of the fact that, in effect, you can sue yourself or sue the commission. That's the same in pistachios and grapes. That's the same thing as in pistachios. But in pistachios, it gives the secretary on its own motion, on its own authority, to order the commission to do something or not do something. The only authority under the table grape commission law is if a handler or shipper doesn't like what's going on and they file a grievance against the secretary, which we did a number of years ago. The commission denied our request. We appealed it to the secretary. The secretary actually agreed with us. The commission chose not to appeal to the ‑‑ I mean, not to sue the secretary in court. But it's hard to imagine that an entity, they call it government speech, they claim before Judge Wanger and the court below that they are a government instrumentality, they are the state, et cetera, but they're allowed to sue the secretary that supposedly can oversee them. The point, before I run out of time here, that I want to make is the court below basically discarded the entire discussion of the Supreme Court in livestock marketing, hung its hat on this court's decision in pistachios, even though this court in pistachios said it was on an abbreviated record because it came up on a preliminary injunction appeal. The court did not finally decide the issue. But it did describe, particularly pages 1010‑1011 of that decision exactly, how involved in intermeddling, if you will, with the pistachio commission's activities and by statute required to is for it to be government speech, does there have to be a substantial amount of control? Or do we ignore what the Supreme Court said in livestock marketing? Judge Wanger did. He said it really doesn't have to be a lot of control as long as it's a government entity and the overarching message is set by the legislature. Here, the overarching message is a California Table Grave Commission can be formed in order to promote and advertise the consumption of table grapes. The Beef Act, they said the same thing, but then the Beef Act complied with the Administrative Procedures Act, went through notice and comment and rulemaking to come up with definitive guidelines and rules and regulations as to exactly what the Beef Board could and could not do and how the Secretary is going to review here. Here we have nothing. There's no regulations except we have some general statute since 1967 that basically allows the commission to run them up whenever they do. We're not here to talk about whether they do a good job or a bad job, whether or not they're carrying out their purpose, whether or not the increase in table grape consumption is due to them or due to them and the shippers. The issue is whether or not this court is going to allow them to call it government speech when there's absolutely no government control whatsoever. It's just a private trade association with our competitors deciding what they want to spend money on. And I'm urging that court. Government control is that they appoint and can remove the members of the commission, and if the government doesn't like what they're doing, it can change the composition of the commission. Yes, but that doesn't make it government speech just because the Secretary of the California Department of Food and Agriculture can remove a commission member because he doesn't like what the commission member is doing. Well, it's government speech even if people are negligent or worse when they make the speech. Speech is generally determined by the function and the person. Now, whether the person should be removed from office and nobody does anything about it or not doesn't affect that. Yes, but Judge Reinhart, what I'm trying to say is the U.S. Supreme Court in the Beef Act, the Secretary had the exact same authority. If that's all that was necessary, the opinion would have been two paragraphs long. It's created by the legislature. The legislature sent the overarching message, which is beef, it's what's for dinner, urged consumers to buy more beef even though they had other programs that said don't eat so much beef, eat more salads and stuff. But if that's all that was required, set up as a government entity, the Secretary's power to remove the board members, it would have been a two-paragraph opinion, but they went on and on and on about government control. You know, you can strengthen an opinion by going on and showing your strongest possible case. You may not have to meet all those conditions to prevail, but when Judge Reinhart's opinion says look how much there is, it doesn't mean that it wouldn't be the same result with less. But, Your Honor, if that were the case, which is I think what the judge below was trying to say, I don't know how it could take him 270 pages to say that, but the Supreme Court in Livestock Marketing then went on to say, after they talked about all the government control, says the degree of government control over the message funded by the checkoff distinguishes these cases from Keller v. State Bar. Keller v. State Bar is where the California Supreme Court said it was government speech under the First Amendment. The U.S. Supreme Court reversed. Well, the government doesn't appoint the members of the California Bar. That's true, but the Supreme Court here is saying the degree of government control over the message funded by the checkoff distinguishes these cases from Keller. Now, where I don't see, and here's the problem that I have with, not with your question, but the idea with the court below, is where is there anything, where is there anything where the Supreme Court gave any indication whatsoever that the degree of control, the intermeddling by the secretary, is not an essential element of government speech? I mean, where do we, how can we come up and just kind of discard it as though it's not important, and as long as the secretary can remove and appoint commission members to only be replaced by another competitor? Well, if you say it's a true governmental entity, then you might not get there. I mean, you could have something that, in effect, where the government controlled the speech, where it would be government speech, but it wouldn't be a government entity, correct? Well, I don't know if I understand correctly. I don't know how setting up a private corporation with the ability to sue and be sued. I don't know what it would be. I'm just saying they're not necessarily joined at the hip, is what I'm suggesting, the way the Supreme Court laid it out. Well, I just, I'd be, well, I personally, who practices constitutional law, would be the last one to say that what they talked about with government control was pure dicta, and they didn't mean a thing about it. Well, the government has the power to remove a number of private officials, particularly if they're regulated by SEC, to remove, you know, CEOs, et cetera, but it doesn't make what the SEC does, or the FTC in regulating whether or not something is misleading advertising in the commercial practice, it doesn't make it government speech just because you have the power to say no or the power to remove someone. Well, but this, here, you've got a corollary power to appoint, so in that case it's more like the SEC than it is like taking a private corporation and saying you must remove your president because of violation of the securities laws, which we have the authority to rule on administratively. I mean, I don't see how it's a parallel analogy. Well, no, but it's not a parallel analogy, because these are the only type of programs that exist, and they only exist in agriculture for some reason, some bizarre reason, but to think just the pro forma power to appoint and remove Ted Zininovich from the Table Grape Commission and replace him with another one of our competitors makes what they're doing that they never look at, never approve, never see, never discuss, they don't have any copies in their office, make it, quote, government speech, the power to appoint another private competitor and ignore the emphasis that the Supreme Court placed in government control. I don't know how this Court can do it. I mean, I can't do it. What about the Amtrak case, LeBron? What did they say, board appointed by the president in a government actor for purposes of the First Amendment? Your Honor, that case is, I beg to differ, it's totally different. The issue, because we know the First Amendment only constrains government and government actors from interfering with speech or regulating speech or restricting speech. The issue there... No, no, I know the issue is the opposite. Right. But they said that for purposes of the First Amendment, Amtrak was a government agency and a government actor. Correct, for purposes of applying the First Amendment in the first place. Amtrak was trying to argue that since we're set up as a private corporation, we're not government, so the First Amendment doesn't even apply to us. That was the issue. The First Amendment only applies one way to Amtrak. It only makes it a government actor. It only makes it a government actor for purposes of applying the First Amendment. But for the other purposes of... So, in other words, in their speech, as opposed to determining whether they stepped on somebody else's rights, they wouldn't be, have government speech? It wouldn't be considered government speech because there they were trying to limit what billboards can go or what signs can go. I was saying if you flipped it. Here they were, the question is whether they were stepping on this private person's rights. But if you were determining whether something is government speech and they've been classified as a government entity, so if it was their speech, it wouldn't be government speech? No. The issue in that would have boiled down to, just like your sign case the last time, is content of the sign. You're not hearing my question. We know what the Amtrak case is. Yes. I'm just saying you're telling us they can't be categorized as the government or government agency for purposes of determining some other case for government speech, only for that case. Oh, no, no. But as far as Amtrak goes, if they want to put their own signage on their own Amtrak trains, that would be government speech. You can't regulate it if they start... And why would that be government speech because they are government entities? Because they are actually the ones speaking. They're paying for it. They're the ones that are putting them up. Well, they pay for it by getting you to... They're the grape commissioner. In other words, they've been defined by law now in that case as being a government entity, so if they go out and do their own speech, then they would be protected by government speech, right? Well, they're funded by general taxpayer revenue. That's one big thing. The only reason... They are, but they could be supported by a city tax, and taxi cab drivers could say, we don't want to pay this tax to help another form of transportation. I mean, it would be an interesting scenario, but that was not what was presented there. It was just whether they were a government actor. I mean, for purposes of... They are government actors for purposes of the First Amendment. I mean, you know, like Section 1983 can only be applied to government actors, and a lot of times it comes up in free speech issues, so you have to determine whether it's a government actor or somebody acting on LARC. I mean, Lebron is a strange case, but the only reason that this became even an issue in the Beef case is going back to, you know, what the court said in United Foods is to, you know, borrowing Thomas Jefferson from 1979, requiring to compel a man to furnish contributions of money for the propagation of opinions, which he disagrees is sinful and tyrannical. They ran with that in United Foods, and even Justice Stevens agreed that if the whole purpose is to take someone's money and use it for speech-related purposes over here, it's unconstitutional, unless it's government speech. Well, how do we define government speech? And I say an essential element, an essential criteria, is a substantial amount of government control and intermeddling in it, not just the appointment power, because the opinion could have been a paragraph long if that was the case. That's what I'm saying. Thank you very much. Thank you.
judges: Reinhardt, Noonan, McKeown